

ISSUED
ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

2002 SEP 11 PM 2:53

| | |
|---|---|
| AMERICAN FAMILY LIFE ASSURANCE COMPANY OF COLUMBUS, ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | CIVIL ACTION NO. |
| TIMOTHY HAGAN and TIM HAGAN FOR GOVERNOR CAMPAIGN ) ) ) | 1:02CV1791 |
| Defendants. ) ) | JUDGE O'MALLEY MAG. JUDGE BAUGHMAN |

### VERIFIED COMPLAINT

Plaintiff American Family Life Assurance Company of Columbus ("AFLAC") files this Verified Complaint ("Complaint") against Defendants Timothy Hagan ("Hagan") and Tim Hagan for Governor Campaign ("Hagan Campaign") (collectively "Defendants") and in support thereof alleges as follows:

### NATURE AND BASIS OF ACTION

1. This action arises out of the knowing and intentional efforts of Defendants to trade unlawfully upon AFLAC's trademark and copyright rights to bolster Hagan's campaign for governor of Ohio. Specifically, this is an action for trademark and service mark dilution under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c); copyright infringement under the Copyright Act of 1976, 17 U.S.C. § 101 *et seq.*; trademark infringement under Section 32(1) of

the Lanham Act, 15 U.S.C. § 1114(1); false designations of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); and unfair competition under the common law of Ohio, all arising out of the Defendants' unauthorized copying of AFLAC's famous AFLAC duck character and AFLAC duck service marks and trademark. AFLAC seeks temporary, preliminary and permanent injunctive relief, damages, and recovery of its costs and reasonable attorneys' fees.

## THE PARTIES

2.  AFLAC is a Nebraska corporation with its principal place of business at 1932 Wynnton Road, Columbus, Georgia 31999. AFLAC is engaged principally in the business of providing supplemental health and life insurance.

3.  Hagan is an individual who, upon information and belief, is a citizen of Ohio and resides at 11308 Edgewater Drive, Cleveland, Ohio 44138. Hagan is a candidate for governor of Ohio in the election to be held on November 5, 2002.

4.  Upon information and belief, Hagan Campaign is an entity of unknown type that has been organized for the purpose of assisting Hagan in his campaign for governor. Upon further information and belief, Hagan Campaign's principal place of business is 1340 Depot St., Suite 102, Rocky River, OH 44116-1741.

## JURISDICTION AND VENUE

5.  This Court has jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1337 and 1338 because this case arises under the Copyright Act, 17 U.S.C. § 101 *et seq.*, and the Trademark Act of 1946, 15 U.S.C. §§ 1051, *et seq.*

6.  This Court has subject matter jurisdiction over AFLAC's state law claims pursuant to 28 U.S.C. § 1367 and the doctrine of supplemental jurisdiction.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and injury giving rise to AFLAC's claims are occurring in this district.

8. Defendants are subject to personal jurisdiction in this Court because they are both residents of Ohio.

## FACTUAL BACKGROUND COMMON TO ALL COUNTS

### AFLAC and Its Services

9. AFLAC is a leading provider of supplemental insurance sold at the worksite in the United States and is also a leading foreign insurer in Japan.

10. A *Fortune 500* company, AFLAC insures more than 40 million people worldwide. At year-end 2001, AFLAC's parent, AFLAC Incorporated, had total assets of $37 billion and annual revenues of more than $9.5 billion.

11. AFLAC's health insurance products in the United States are designed to provide supplemental coverage for individuals who already have major medical or primary insurance coverage. AFLAC's many supplemental health insurance policies include cancer plans, supplemental general medical expense plans, living benefit life plans, hospital intensive care insurance, accident and disability insurance, hospital indemnity insurance, long-term care insurance, and short-term disability insurance.

12. AFLAC's life insurance products include ordinary life insurance policies such as whole life, term life, and limited pay life. A large portion of the ordinary term life insurance AFLAC issues is sold through payroll deduction at the worksite.

13. AFLAC offers its products through a network of 43,000 licensed agents and, in the United States, sells its products to employees of more than 200,000 payroll groups.

14. AFLAC has worked diligently to develop a reputation as a responsible corporate citizen and quality employer. AFLAC's efforts in this regard have proven to be successful, as evidenced by *Fortune* magazine's ranking of AFLAC as the number one insurance company to work for in the United States in the magazine's 2001 listing of "The 100 Best Companies to Work For In America," published in its January 10, 2002 issue.

## AFLAC's Duck Commercials and Trademark

15. In an effort to strengthen its already highly visible brand in the marketplace, AFLAC launched a series of television commercials (the "Duck Commercials") in December 1999 that feature a white duck (the "AFLAC Duck") that quacks "AFLAC" (the "Duck Sound") when the subject of supplemental insurance arises in conversation.

16. Actor Gilbert Gottfried supplies the distinctive voice of the AFLAC Duck in each of the Duck Commercials.

17. The AFLAC Duck has appeared as the centerpiece in eleven television commercials. A true and correct copy of the first Duck Commercial, entitled "Park Bench," is attached hereto as Exhibit A.

18. AFLAC's Duck Commercials have been broadcast on each of the major free and cable television networks during some of the networks' most popular programming. Placement of the commercials has included broadcast during the evening news programs on ABC, NBC and CBS; during cable news programs on CNN Headline News and CNBC; on CNN's Larry King Live; and during the television broadcasts of numerous major sporting events, including Major League Baseball games, NCAA Football games, and the French Open and Wimbledon tennis championships. In 2001 alone, the Duck Commercials received over 2 billion television impressions with adults aged 25-54.

19. AFLAC's Duck Commercials have been greeted with overwhelming consumer acceptance and approval and are widely recognized and associated with AFLAC.

20. Consumer testing by an independent research firm revealed that the first Duck Commercial, entitled "Park Bench," received one of the highest "recall" scores of any commercial tested in the firm's history. Attached hereto as Exhibit B is a true and correct copy of this study as well as copies of articles from various print publications regarding the success of the AFLAC Duck advertising campaign.

21. Due to the overwhelming success of its broadcast campaign, AFLAC has built its entire advertising strategy around the AFLAC Duck. The Duck has appeared in outdoor advertisements, made public appearances, and appeared in print advertisements published in such well known national publications as *Forbes* and *Business Week*, along with a variety of other investor and trade journals. True and correct copies of print advertisements featuring the AFLAC Duck are attached hereto as Exhibit C.

22. The AFLAC Duck is also featured on a variety of merchandise, including a stuffed toy that emits the Duck Sound when squeezed, hats, scarves, ties, shirts and golf club head covers. True and correct images of some these products are attached as Exhibit D.

23. Through AFLAC's continuous use of the AFLAC Duck in commerce in the United States as a symbol to identify itself, its quality services, products, and goodwill, the AFLAC Duck and the Duck Sound are service marks and trademarks that serve in the minds of the consuming public to identify AFLAC alone. (AFLAC's service mark and trademark rights in the AFLAC Duck and Duck Sound are hereinafter referred to collectively as the "AFLAC Duck Marks").

24. By virtue of its exclusive use of the AFLAC Duck Marks in interstate commerce, AFLAC is the exclusive owner of all right, title, and interest in and to the marks.

25. By virtue of its substantial promotion and sale of goods and services under the AFLAC Duck Marks, the marks are famous and assets of substantial value to AFLAC.

26. In recognition of AFLAC's exclusive right to use the AFLAC Duck Marks in commerce in the United States, the United States Patent and Trademark Office ("USPTO") has granted AFLAC numerous registrations for the AFLAC Duck Marks, including Reg. Nos. 2,561,831, 2,578,516, and 2,607,415 (for the Duck Sound). True and correct copies of each of these registrations are attached hereto as Exhibit E.

27. Each of the registrations listed in Paragraph 26 above are valid and subsisting in law, were duly and legally issued, are *prima facie* evidence of the validity of the marks registered therein, and constitute constructive notice of AFLAC's ownership of the marks registered pursuant to 15 U.S.C. §§ 1057(b) and 1072.

28. AFLAC has been granted numerous copyright registrations by the U.S. Copyright Office for the Duck Commercials. True and correct copies of these registrations are attached hereto as Exhibit F.

**Defendants and Their Unlawful Conduct**

29. Hagan is a former Ohio County Commissioner who is now running for Governor of Ohio. His opponent in the November 5 election is incumbent Bob Taft ("Taft"). Despite campaigning on his behalf by his wife Kate Mulgrew, an actress who starred in the television series *Star Trek: Voyager*, and other *Star Trek* cast members, Hagan's recognition among voters is low.

30. In an attempt to boost Hagan's voter recognition, the Defendants have released a series of targeted attacks on Taft and his record as governor. One such attack is through a series of commercials, the first of which was released on August 29, 2002 over an Internet Web site located at the URL "www.taftquack.com" (the "Infringing Commercials").

31. The Infringing Commercials feature an animated character referred to as "TaftQuack" that consists of Taft's head on the body of a white duck. In the first commercial, the TaftQuack character appears below segments of Taft's campaign commercials and utters "TAFTQUACK" in a voice that copies the AFLAC Duck Sound each time a new segment from Taft's commercials is played. The commercial then attacks the statements Taft makes about himself and his achievements in the segments played from his commercials. In the second commercial, the TaftQuack character appears at a podium at a press conference and utters "TAFTQUACK" each time a question is asked by the audience. (True and correct copies of the Infringing Commercials are contained on a CD-ROM attached hereto as Exhibit G.).

32. No part of the Infringing Commercials comments upon or criticizes AFLAC or its goods or services in any way. Instead, it is evident that the Defendants have created the TaftQuack character for no reason other than to increase Hagan's voter recognition by trading on the goodwill of AFLAC's well-known corporate symbol. This fact has not been lost on members of the consuming public. (See true and correct copies of newspaper articles attached hereto as Exhibit H that identify the TaftQuack character with the AFLAC Duck.)

33. The Defendants have made aggressive efforts to publicize the launch of their Infringing Commercials and TaftQuack character. The Hagan Campaign held a press conference on August 29, 2002 to announce the launch of the first commercial and to tout the TaftQuack character. Simultaneously, the Hagan Campaign issued a press release that discusses the

commercial and character in detail. A true and correct copy of the press release is attached hereto as Exhibit I.

34. The Infringing Commercials are prominently promoted on the home page of the Hagan Campaign Web site (located at the URL "www.haganforgovernor.com"), and the site provides a link to the TaftQuack site. (A true and correct copy of the home page of the Hagan Campaign Web site is attached hereto as Exhibit J.)

35. The TaftQuack site similarly contains a link back to the Hagan Campaign Web site, where voters are prominently encouraged to contribute to the Hagan Campaign, including through contributions made directly through the site. (A true and correct copy of the "Links" page of the TaftQuack site is attached hereto as Exhibit K.) The TaftQuack site also includes a link to another Internet attack ad on Taft, located at the URL "www.firetaft.com".

36. Defendants use the TaftQuack character in the TaftQuack commercials and separately as a stand-alone symbol to identify Hagan and the Hagan Campaign. Attached hereto as Exhibit L is a true and correct printout from the TaftQuack site that shows use of a still image of the TaftQuack character as a symbol for the Defendants and their campaign efforts.

37. On September 5, 2002, counsel for AFLAC notified the Hagan Campaign of AFLAC's legal rights and its position that the Defendants' creation and broadcast of the first Infringing Commercial constitutes a knowing and willful infringement of AFLAC's copyright in the AFLAC Duck character and a knowing and willful infringement and dilution of the AFLAC Duck Marks. AFLAC demanded that Defendants cease and desist from all further broadcast of the commercial by noon on September 6, 2002.

38. The parties discussed settlement possibilities, but, to date, have been unable to resolve the matter. In the midst of the parties' discussion, Defendants released the second of the

Infringing Commercials and issued a press release that disclosed AFLAC's concerns with the commercials.

39. As of the filing of this Complaint, the Infringing Commercials remain available for viewing on the TaftQuack site unchanged, and the Defendants are continuing to direct voters to the site through the link on the "Hagan for Governor" Web site.

40. AFLAC suffers substantial irreparable injury to its AFLAC Duck Marks and copyright each day the Defendants continue to trade unlawfully on the AFLAC Duck character and marks. In light of the Defendants' unwillingness to cease use of the AFLAC Duck character in the face of AFLAC's clear legal rights, AFLAC has been left with no alternative but to institute this action and seek immediate injunctive relief.

## COUNT I

### Federal Trademark and Service Mark Dilution

41. AFLAC incorporates herein and realleges, as if fully set forth in this Paragraph, the allegations of Paragraphs 1 through 40 above, inclusive.

42. Due to AFLAC's prominent, longstanding, and exclusive use and promotion of the distinctive AFLAC Duck Marks throughout the United States, the AFLAC Duck Marks are famous and acquired such fame well prior to acts of Defendants complained of herein.

43. Defendants' unauthorized use of the AFLAC Duck Marks in the Infringing Commercials constitutes commercial use in commerce of a mark or name that tarnishes and dilutes the distinctive quality of the AFLAC Duck Marks in violation of the Federal Trademark Dilution Act of 1995, 15 U.S.C. § 1125(c).

44. Defendants' aforesaid conduct has caused, and unless temporarily, preliminarily, and thereafter permanently enjoined, will continue to cause irreparable injury to AFLAC and to the substantial goodwill associated with its AFLAC Duck Marks.

## COUNT II

## Copyright Infringement

45. AFLAC incorporates herein and realleges, as if fully set forth in this Paragraph, the allegations of Paragraphs 1 through 44 above, inclusive.

46. AFLAC's Duck Commercials are original, expressive works subject to protection under the copyright laws of the United States.

47. AFLAC is the owner of all right, title and interest in and to valid copyrights in the Duck Commercials and in U.S. Copyright registrations issued for the commercials and attached hereto as Exhibit F.

48. AFLAC's copyright in the Duck Commercials extends to the original, expressive elements of the commercials, including the AFLAC Duck character and the original sound it makes as it quacks "AFLAC."

49. Defendants' TaftQuack character is substantially similar to the original, constituent elements of the Duck Commercials, including the AFLAC Duck character and the Duck Sound, and, upon information and belief, Defendants intend for their duck to be substantially similar to these elements of the Duck Commercials.

50. Defendants had access to AFLAC's Duck Commercials prior to creation of the Infringing Commercials.

51. By virtue of Defendants' aforesaid acts, Defendants have willfully infringed AFLAC's copyright in the Duck Commercials in violation of the Copyright Act of 1976, 17

U.S.C. § 101 et seq., and, as a result, AFLAC has been irreparably injured and will continue to be irreparably injured unless and until Defendants are temporarily, preliminarily, and thereafter permanently, enjoined by this Court from any and all uses of the Infringing Commercial.

## COUNT III

### Federal Trademark and Service Mark Infringement

52. AFLAC incorporates herein and realleges, as if fully set forth in this Paragraph, the allegations of Paragraphs 1 through 51 above, inclusive.

53. Defendants' use in commerce of the AFLAC Duck Marks is likely to cause consumer confusion, mistake or deception as to whether AFLAC endorses or supports Hagan and/or his campaign for governor. Defendants' actions therefore infringe AFLAC's exclusive rights in its federally registered AFLAC Duck Marks in violation of Section 32(1) of the Trademark Act of 1946, 15 U.S.C. § 1114(1).

54. Defendants' infringing use of the AFLAC Duck Marks is causing and is likely to continue to cause substantial injury to AFLAC and the public unless and until enjoined by this Court. AFLAC is therefore entitled to temporary, preliminary and thereafter permanent injunctive relief to remedy Defendants' actions.

## COUNT IV

### Use of False Designations of Origin, False Descriptions and False Representations in Violation of Section 43(a) of the Lanham Act

55. AFLAC incorporates herein and realleges, as if fully set forth in this Paragraph, the allegations of Paragraphs 1 through 54 above, inclusive.

56. Defendants' use in commerce of the AFLAC Duck Marks is likely to cause consumer confusion, mistake or deception as to whether AFLAC endorses or supports Hagan

11

and/or his campaign for governor. Defendants' actions therefore infringe AFLAC's exclusive rights in its AFLAC Duck Marks in violation of Section 43(a) of the Trademark Act of 1946, 15 U.S.C. § 1125(a).

57. Defendants' acts of unfair competition as alleged herein are causing and are likely to continue to cause substantial injury to AFLAC and the public. AFLAC is therefore entitled to temporary, preliminary and thereafter permanent injunctive relief to remedy Defendants' actions.

## COUNT V

### Common Law Unfair Competition

58. AFLAC incorporates herein and realleges, as if fully set forth in this paragraph, the allegations of paragraphs 1 through 57 above, inclusive.

59. Upon information and belief, Defendants have used the AFLAC Duck Marks and copied the AFLAC Duck character as expressed in AFLAC's Duck Commercials with the intent of trading unlawfully upon AFLAC's goodwill and the goodwill in the AFLAC Duck Marks. Defendants' actions therefore constitute unfair competition with AFLAC at common law.

60. Defendants' actions have irreparably injured and will continue to irreparably injure AFLAC unless and until this Court enjoins their conduct temporarily, preliminarily and thereafter permanently.

### JURY DEMAND

61. AFLAC demands trial by jury of all issues raised in this Complaint.

### PRAYER FOR RELIEF

WHEREFORE, by virtue of Defendants' unlawful conduct as alleged in Counts I through VI of this Complaint, AFLAC respectfully prays that:

1. The Court enter judgment: (a) that AFLAC owns valid, enforceable, and exclusive copyright rights in the Duck Commercials and the AFLAC Duck as expressed therein; (b) that AFLAC is the exclusive owner of all right, title and interest in and to the copyright registrations issued by the U.S. Copyright Office for the Duck Commercials and that these registrations are valid and subsisting in law; (c) that AFLAC owns valid, enforceable, and exclusive trademark and service mark rights in the AFLAC Duck Marks; (d) that AFLAC is the exclusive owner of all right, title and interest in and to the registrations issued by the USPTO for the AFLAC Duck Marks and that these registrations are valid and subsisting in law; (e) that the AFLAC Duck Marks are famous; and (f) that Defendants, as a result of their unauthorized actions, have diluted the distinctive quality of the AFLAC Duck Marks in violation of 15 U.S.C. § 1125(c); infringed AFLAC's copyright in the Duck Commercials in violation of the Copyright Act of 1976, 17 U.S.C. § 101 *et seq.*; infringed the AFLAC Duck Marks in violation of 15 U.S.C. § 1114(1); used false designations of origin, false descriptions and false representations, in violation of 15 U.S.C. § 1125(a); and engaged in unfair competition under the common law of Ohio;

2. The Court enter temporary, preliminary and permanent injunctions enjoining Defendants and each of their agents, employees, officers, directors, representatives and all others in active concert or participation with them, from:

    (a) further broadcast, publication, or dissemination of the Infringing Commercials, in whole or in part, and any other commercial or advertisement of any kind or nature, which includes any duck character that is substantially similar to the AFLAC Duck or the Duck Sound;

(b) adopting or using as a trademark or service mark any mark which incorporates the AFLAC Duck Marks or any confusingly similar or dilutive mark;

(c) passing off or inducing or enabling others to pass themselves and their campaign off as being associated or affiliated with, or sponsored or endorsed by, AFLAC; and

(d) otherwise diluting the distinctive quality of or infringing the AFLAC Duck Marks, otherwise unfairly competing with, injuring the business reputation of, or damaging the goodwill of AFLAC in any manner, otherwise falsely representing themselves as being connected with, endorsed by, or associated with AFLAC, otherwise engaging in unfair competition that in any way injures AFLAC, or otherwise copying any of AFLAC's copyrighted works;

3. Pursuant to Section 36 of the Trademark Act of 1946, 15 U.S.C. § 1118, Defendants be directed to deliver up to AFLAC for destruction all copies of the Infringing Commercials, and all other materials of any kind that include the TaftQuack character or that infringe or dilute the AFLAC Duck Marks, or any confusingly similar mark or symbol, in any form;

4. Defendants be required to pay AFLAC its actual damages, with such amounts to be trebled as authorized by 15 U.S.C. §1117.

5. An accounting be had and Defendants be required to disgorge to AFLAC any profits they have earned unjustly as a result of their unlawful conduct as described herein;

6. Defendants be required to pay AFLAC statutory damages pursuant to 15 U.S.C. § 1117(c) in the amount of $1,000,000.

7. Defendants be required to pay AFLAC statutory damages pursuant to 17 U.S.C. § 504 in the amount of $150,000;

8. Defendants be required to pay AFLAC punitive damages due to the willful and intentional nature of their actions;

9. Defendants be required to pay AFLAC the costs of this action and its reasonable attorneys' fees incurred in connection with this action;

10. AFLAC be granted such other different and additional relief as the Court deems just and proper.

Respectfully submitted, this 11th day of September, 2002.

*signature*

CHRISTOPHER B. FAGAN
Ohio Bar Number 0026074
JUDE A. FRY
Ohio Bar Number 0053651
FAY, SHARPE, FAGAN, MINNICH & MCKEE, LLP
1100 Superior Avenue, Seventh Floor
Cleveland, OH 44114-2518
(216) 861-5582
(216) 241-1666 – facsimile
cfagan@faysharpe.com
jfry@faysharpe.com


OF COUNSEL:

DAVID J. STEWART
Georgia Bar Number 681149
JOHN D. HAYNES
Georgia Bar Number 340599
ALSTON & BIRD, LLP
1201 W. Peachtree Street
Atlanta, Georgia 30309-3424
(404) 881-7000
(404) 881-7777 – facsimile
dstewart@alston.com

Attorneys for Plaintiff
AMERICAN FAMILY LIFE ASSURANCE
COMPANY OF COLUMBUS

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| AMERICAN FAMILY LIFE ASSURANCE COMPANY OF COLUMBUS, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CIVIL ACTION NO. |
| TIMOTHY HAGAN and TIM HAGAN FOR GOVERNOR CAMPAIGN | ) ) ) ) | _____ |
| Defendants. | ) ) | |

## VERIFICATION

Personally appeared before me, the undersigned officer duly authorized by law to administer oaths, Kathelen V. Spencer, who having been duly sworn, deposes and states the following:

I am Kathelen V. Spencer, Executive Vice President and Director of Corporate Communication for American Family Life Assurance Company of Columbus ("AFLAC"). I have read the foregoing Verified Complaint, reviewed the relevant and pertinent business records of AFLAC kept in the ordinary course of its business and have spoken with appropriate employees of AFLAC. Based upon my personal knowledge and investigation, I can state that the facts contained in the Verified Complaint are true and correct.

This *11* day of September 2002.

*Kathelen V. Spencer*
KATHELEN V. SPENCER
Executive Vice President
Director of Corporate Communication
American Family Life Assurance Company
of Columbus

Sworn to and subscribed before me
this ___ day of September 2002.

*Linda M. Hunt*
Notary Public

My Commission Expires:

*April 1, 2005*

ATL01/11273921v1